## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

STONE CREEK-COLORADO, LLC.,
a Minnesota limited liability limited partnership,

**Plaintiff,**

v.

PRESCIENT CAPITAL PARTNERS, LTD;
a Wisconsin corporation, PCP STONE
CREEK LLC, a Wisconsin limited
limited partnership, STEVE C. YOUNG,
an individual, and DAN KECK, an
individual,

**Defendants.**

---

### PLAINTIFF'S VERIFIED COMPLAINT AGAINST DEFENDANTS PRESCIENT CAPITAL PARTNERS, LTD, PCP STONE CREEK LLC, STEVE C. YOUNG and DAN KECK

---

PLAINTIFF STONE CREEK-COLORADO, LLC. ("Stone Creek"), by and through its undersigned counsel, as and for its Complaint ("the Complaint") against PRESCIENT CAPITAL PARTNERS LTD ("Prescient"), PCP STONE CREEK LLC ("PCP"), STEVE C. YOUNG ("Young") and DAN KECK ("Keck") (collectively "the Defendants"") avers as follows.

### <u>NATURE OF THE ACTION</u>

1.      Plaintiff, Stone Creek brings this claim against Defendants Prescient Capital Partners Ltd, PCP Stone Creek LLC, Steve C. Young and Dan Keck for common law fraud, intentional interference with prospective business relations and alter-ego piercing the corporate veil, fraudulent transfer, civil conspiracy, unjust enrichment and request for a preliminary injunction.

1

## PARTIES

2.      Plaintiff Stone Creek is a limited-liability company for-profit organized under the laws of the State of Delaware. A copy of Stone Creek's corporate records from the office of the Secretary of State of Delaware evidencing this is annexed hereto as Exhibit A.

3.      Plaintiff Stone Creek is a single member limited-liability company with its principal place of business located at 229 Minnetonka Ave S, Unit 369, Wayzata, Minnesota 55391-1999, in the State of Minnesota.

4.      Plaintiff Stone Creek's single member, Mikhail Kaminski, is an individual and citizen of the State of Minnesota who resides at 229 Minnetonka Ave S, Unit 369, Wayzata, Minnesota 55391-1999, in the State of Minnesota.

5.      Stone Creek is involved in the area of commercial real estate.

6.      Pursuant to records provided from the office of the Secretary of State of Wisconsin, Defendant Prescient is a domestic corporation organized under the laws of the State of Wisconsin.

7.      Pursuant to records provided from the office of the Secretary of State of Wisconsin, Defendant Prescient's principal place of business is located at PO Box 180673, Delafield, Wisconsin 53018, in the State of Wisconsin. A copy of Prescient's corporate records from the office of the Secretary of State of Wisconsin evidencing this is annexed hereto as Exhibit B.

8.      Pursuant to records provided by the office of the Secretary of State of Wisconsin, Defendant PCP is a domestic limited-liability company organized under the laws of the State of Wisconsin by Defendants Prescient and Young. A copy of PCP's Articles of Organization from the office of the Secretary of State of Wisconsin evidencing this is annexed hereto as Exhibit C.

9.      Defendant PCP is managed by two members: Defendants Prescient and Young. *See* Exhibit C.

10.     Pursuant to records provided from the office of the Secretary of State of Wisconsin, Defendant Young is an individual and citizen of the State of Wisconsin with a principal place of business at 524 Milwaukee Street, Suite 100, Delafield, Wisconsin 53018 in the State of Wisconsin.

11.     Defendant Young is the founder and owner of Defendant Prescient. A copy of the Security and Exchange Commission administrative proceedings previously filed evidencing this is annexed hereto as Exhibit D.

12.     Upon information and belief, Defendant Keck is an individual and citizen of the State of Wisconsin with a principal place of business at 524 Milwaukee Street, Suite 100, Delafield, Wisconsin 53018 in the State of Wisconsin.

13.     Defendant Young is a co-owner and managing partner of Defendant Prescient. A copy of an electronic mail message evidencing this is annexed hereto as Exhibit E.

14.     Upon information and belief, Defendants Young and Keck are equal co-owners of Defendant Prescient. *See* Exhibits D-E.

15.     Defendant Prescient is the founder and is a member of Defendant PCP.

16.     Defendant Young is the founder and is a member of Defendant PCP.

17.     Plaintiff is informed and believes, and thereon alleges that at all times mentioned herein, each of the Defendants was the agent, employee, and partner of each of the remaining Defendants, and was acting within the scope and authority of such agency, employment and partnership and with the knowledge, consent, approval, and ratification of the remaining Defendants, and each of them.

18.     Plaintiff is informed and believes, and thereon alleges that any limited-liability companies affiliated with Defendants Prescient, PCP, Young and Keck are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's injuries  and damages as herein alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

19.     Plaintiff is informed and believes, and thereon alleges that any corporations affiliated with Defendants Prescient, PCP, Young and Keck are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's injuries  and damages as herein alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

20.     Plaintiff is informed and believes, and thereon alleges that any general partnerships affiliated with Defendants Prescient, PCP, Young and Keck are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's injuries and damages as herein alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

21.     Plaintiff is informed and believes, and thereon alleges that any limited-liability partnerships affiliated with Defendants Prescient, PCP, Young and Keck are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's injuries

and damages as herein alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

22.     Plaintiff is informed and believes, and thereon alleges that any individuals affiliated with Defendants Prescient, PCP, Young and Keck are responsible in some manner for the occurrences and happenings herein alleged, and that Plaintiff's injuries and damages as herein alleged were and are the direct and proximate result of the actions of said Defendants, and each of them.

23.     Plaintiff is informed and believes, and thereon alleges that at all times mentioned herein, there has existed a unity of interest and ownership between Young, Deck and Defendants Prescient and PCP, such that any individuality or separateness between Young, Deck and Defendants Prescient and PCP has ceased, and Defendants Prescient and PCP are now mere shells and alter egos of Young and Deck, in that Young and Deck controlled and dominated Prescient and PCP's business affairs and organized and operated Prescient and PCP as a mere extension and subsidiary of their personal business endeavors.

## JURISDICTION AND VENUE

24.     This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as Plaintiff and Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000).

25.     The Court has personal jurisdiction over Defendants Prescient, Young and Deck in circumstances where they travelled to Eagle County in the State of Colorado on March 7, 2019, in order to inspect the property located at 40800 Highway 6, Avon, Eagle County in the State of Colorado, described as Lot 5, Eagle-Vail, Commercial Service Center, First Amendment, Lots 2 Through 6, Block 2, according to the plat recorded July 19, 1995 in book 671 at page 542, Eagle County in the State of Colorado (hereafter the 'Property'). A copy of an electronic mail message evidencing flights booked for this inspection is annexed hereto as Exhibit F.

26.     The Court has personal jurisdiction over Defendants Prescient, Young and Deck in circumstances where they communicated via electronic mail messages in order to engage Land Title Guarantee Company to conduct the transaction the subject of the within proceedings.

27.    Land Title Guarantee Company were responsible for conducting due diligence on title to the Property by Defendants Young and Deck and prepared the closing documents for them in the transaction the subject of the within proceedings.

28.    Land Title Guarantee Company have offices at 3033 East First River Avenue, Suite 600, Denver, Colorado 80206, in the State of Colorado. A copy of the closing loan statement for the transaction the subject of the within proceedings evidencing this is annexed hereto as Exhibit G.

29.    The Court has personal jurisdiction over all Defendants Prescient and PCP in circumstances where these Defendants conducted purposeful contacts with the jurisdiction of this Court by making several filings with the Eagle County Recorder's Office in the State of Colorado regarding the property the subject of these proceedings is located in the State of Colorado.

30.    The Court has personal jurisdiction over  Defendants in circumstances where Defendants conducted purposeful contacts with the jurisdiction of this Court by sending electronic mail messages to Eagle County Recorder's Office in the State of Colorado in order to affect these filings on the Property.

31.    The Court has personal jurisdiction over Defendants in circumstances where Defendants conducted purposeful contacts with the jurisdiction of this Court by executing a business transaction with the Plaintiff in Eagle County in the State of Colorado regarding the Property the subject of these proceedings.

32.    The Court has personal jurisdiction over  Defendants pursuant to §13-1-124(1)(c), C.R.S of the State of Colorado's long-arm statutes in circumstances where the property the subject of these proceedings is located in the State of Colorado.

33.    The Court has personal jurisdiction over  Defendants pursuant to §13-1-124(1)(b), C.R.S of the State of Colorado's long-arm statutes in circumstances where  Defendants committed acts the subject of these proceedings which transpired in the State of Colorado.

34.    The Court has personal jurisdiction over this action pursuant to the Federal Rules of Civil Procedure in circumstances where  Defendants have availed themselves of the laws of the jurisdiction of this Court during the time period complained of in these proceedings.

35.    Venue is proper under 28 U.S.C. §1391(b)(2) since a substantial part of the events giving rise to the claims asserted herein occurred within the territorial jurisdiction of this Court

specifically: the communication of fraudulent misrepresentations, filing of a transfer and erection of signs on the Property in an attempt re-sell the Property.

## FACTS COMMON TO ALL CAUSES OF ACTION

**The Loan Agreement**

36.     On February 22, 2019, the Plaintiff and Defendant Young spoke on the telephone regarding a potential loan transaction regarding the Property.

37.     Defendant Young expressed a desire to close the loan transaction and sent an electronic mail message on February 26, 2020 to the Plaintiff signing this correspondence as the Founder and Managing Partner of Defendant Prescient.

38.     Defendant Young included Defendant Keck in this electronic mail message of February 26, 2020 to the Plaintiff.

39.     Defendant Keck in all electronic mail message communications with the Plaintiff signed each of the correspondence as the Managing Partner of Defendant Prescient. *See* Exhibit E.

40.     Defendants Young and Defendant Keck represented themselves to Plaintiff as the owners of Defendant Prescient.

41.     Defendants Young and Defendant Keck represented themselves to Plaintiff as the only and main decision-makers for the entity Defendant Prescient.

42.     On March 15, 2019, Defendant Prescient and Plaintiff Stone Creek executed a Loan Agreement whereby Defendant Prescient lent Plaintiff the sum of three million twenty-five thousand dollars ($3,025,000) (the "Loan").

43.     The interest rate charged by Defendant Prescient on the Loan was ten percent (10%), exclusive of any default interest.

44.     The Loan Agreement was in order for Plaintiff, Stone Creek, to refinance the existing indebtedness on the Property.

45.     Plaintiff never intended to sell the Property to  Defendant Prescient.

46.     It was never the intent of  Plaintiff that Defendant Prescient provide the Loan in order to acquire the Property.

47.     Plaintiff and Defendant Prescient executed the Loan Agreement with Keck and Young signing as Partners of Defendant Prescient. A copy of the executed Loan Agreement is annexed hereto as Exhibit H.

48.      The Loan Agreement  contains a forum selection governing clause in the event of a dispute between the parties concerning the Loan Agreement and ancillary loan documents, including the Deed of Trust or Assignment of Rents.

49.     Pursuant to Article 13 of the Loan Agreement, a dispute between Defendant Prescient and  Plaintiff regarding the loan obligations under the Loan and ancillary documents must be litigated in State or Federal Court in the State of Wisconsin. *See* Article 13, Exhibit H.

50.     Pursuant to Article 13 of the Loan Agreement, a dispute between Defendant Prescient and  Plaintiff regarding the Deed of Trust or Assignment of Rents must be litigated in State or Federal Court in the State of Colorado. *See* Article 13, Exhibit H.

51.     Pursuant to Article 13 of the Loan Agreement, any dealings or relationship between Defendant Prescient and  Plaintiff except those pertaining to the Deed of Trust or Assignment of Rents must be litigated in State or Federal Court in the State of Wisconsin. *See* Article 13, Exhibit H.

52      The express wording of Article 13 of the Loan Agreement  does not apply to third parties, including  Defendants Young and Deck and PCP. *See* Article 13, Exhibit H.

53.     Pursuant to the express wording of Article 13 of the Loan Agreement, any dealings or relationship between Defendant Prescient and  Plaintiff pertaining to the Deed of Trust or Assignment of Rents must be litigated in State or Federal Court in the State of Colorado. *See* Article 13, Exhibit H.

**Ancillary Loan Documents**

54.     On March 15, 2019, Plaintiff, Stone Creek, executed a promissory note as part of the terms of the Loan Agreement with Keck and Young signing as Partners of Defendant Prescient. A copy of the promissory note is annexed hereto as Exhibit I.

55.     Plaintiff, Stone Creek, executed a warranty deed for the property located at the Property filed in the Clerk & Recorder's Office of Eagle County, Colorado (the "Recorder's Office"). A copy of the warranty deed is annexed hereto as Exhibit J.

**The Property and Loan Payments**

56.     Plaintiff was conveyed ownership of the Property on September 7, 2018 by Stone Creek Business Center, LLLP.

57.     The Property was occupied by a number of commercial tenants paying monthly rent to  Plaintiff, Stone Creek.

58.     Plaintiff's commercial tenants ensure lucrative revenue is generated from the Property. A copy of the Property's rent roll summary is annexed hereto as Exhibit K.

59.     Plaintiff's commercial tenants are well established reputable businesses. *See* Exhibit K.

60.     Pursuant to the terms of the Loan Agreement Plaintiff, Stone Creek, was obliged to discharge monthly payments to Defendant Prescient, being the interest only of the Loan.

61.     Plaintiff discharged its monthly payments in a timely fashion for the months of April, May, July and August 2019.

62.     Plaintiff was short the sum of eleven thousand dollars ($11,000) for the interest payment and provided Defendant Prescient with consent to withdraw funds from Plaintiff, Stone Creek's business account to discharge this sum.

63.     Plaintiff missed payments during September and October 2019.

64.     Notwithstanding this, Plaintiff complied with the Loan Agreement, discharging its monthly payments.


**The Lockbox System**

65.     Plaintiff and Defendant Prescient in tandem with the Loan Agreement executed a Deed of Trust and Assignment of Rents and Leases Security Agreement and Fixture Filing and Assignment of Rents and Leases Agreement (collectively "Rents and Leases Agreement"), both governed by the laws of the State of Colorado, executed by Keck and Young signing as Partners of Defendant Prescient. A copy of the Rents and Leases Agreement is annexed hereto as Exhibit L.

66.     Plaintiff in executing the Rents and Leases Agreement provided further assurances to Defendant Prescient for the repayment of the Loan.

67.     Pursuant to terms of the Rents and Leases Agreement, Defendant Prescient obtained a security interest in the Property, not a mortgage in the Property, and could only exercise

a right or interest in receiving the rent payments from the Property. *See* Exhibit L, Deed of Trust paragraph 4, p.4 and Assignment of Rents and Leases Agreement, Recital 1, paragraph 1, p.1.

68.     Pursuant to the Rents and Leases Agreement, Plaintiff, Stone Creek, provided its consent to a lockbox system.

69.     The lockbox system permitted rent from the Property to be transferred directly to Defendant Prescient to discharge the loan re-payments.

70.     Defendant Prescient received payments pursuant to the lockbox system from November 2019 onwards.

71.     Defendant Prescient at no stage complained to Plaintiff, Stone Creek that it was not receiving rent from the Property pursuant to the lockbox system and the Rents and Leases Agreement.

72.     The lock system ensured repayments of the Loan to Defendant Prescient.

73.     The Rents and Leases Agreement did not create a mortage over the Property in favor of Defendant Prescient. *See* Exhibit L, paragraph 4, p.4.

**The Forbearance Agreement**

74.     On November 14, 2019, Defendant Prescient and  Plaintiff executed a Forbearance Agreement executed by Keck and Young signing as Partners of Defendant Prescient. A copy of the Forbearance Agreement is annexed hereto as Exhibit M.

75.     Pursuant to Article 11, any interpretation of the Forbearance Agreement is governed by the law of the State of Wisconsin.

76.     The Forbearance Agreement contains no exclusive forum selection clause provision in the event of a dispute between the contracting parties, Defendant Prescient and Plaintiff Stone Creek.

77.     Pursuant to recital A of the Forbearance Agreement, Defendant Prescient acknowledged that Plaintiff Stone Creek is the owner of the Property. *See* Exhibit M, Recital A, p. 1.

78.     Pursuant to  recitals E and F and Article 3 of the Forbearance Agreement, Defendant Prescient, as the Lender, agreed to forbear on pursuing any remedy for default pursuant to the Loan Agreement until at least December 31, 2019. *See* Exhibit M, Recitals E-F and Article 3, pp. 1-2.

79.     Pursuant to Article 4(a) of the Forbearance Agreement, Plaintiff Stone Creek was obliged to pay Defendant Prescient by wire transfer fifty-one thousand two hundred ninety-three dollars thirty-three cents ($51,293.33) no later than November 22, 2019. *See* Exhibit M, Article 4(a), p. 3.

80.     Pursuant to Article 4(c), Plaintiff was obligated to deliver to Defendant Prescient a deed in lieu of foreclosure of the Property.

81.     Pursuant to Article 4(c), Defendant Prescient agreed not to record the deed in lieu of foreclosure of the Property provided Plaintiff Stone Creek made the payment of fifty-one thousand two hundred ninety-three dollars thirty-three cents ($51,293.33) by November 22, 2019.

82.     Plaintiff Stone Creek paid Defendant Prescient fifty-one thousand two hundred ninety-three dollars thirty-three cents ($51,293.33) by November 22, 2019.

83.     Plaintiff delivered to Defendant Prescient a deed in lieu of foreclosure of the Property.

84.     Plaintiff, in so doing, performed its  obligations under the Forbearance Agreement.

85.     Plaintiff complied with the terms of the Forbearance Agreement.

**Releases not to Sue**

86.     Pursuant to Article 13 of the Forbearance Agreement, Plaintiff agreed to release and promise not to sue Defendant Prescient with regard to any claims occurring prior to or after the date of the Forbearance Agreement of November 22, 2019. *See* Exhibit M, Article 13(a), p. 7.

87.     Pursuant to Article 13, no definition is provided for the term 'any claims.'

88.     The Forbearance Agreement provides no definition of the term 'any claims.'

89.     Pursuant to the express wording of Article 13 of the Forbearance Agreement, the parties did not anticipate or contemplate claims to include future fraud, intentional interference with prospective business relations or the commission of a fraudulent transfer when executing this agreement.

90.     Defendant Prescient insisted in bad faith on the release clause in the Forbearance Agreement in an attempt to protect it against its subsequent fraudulent and unconscionable conduct.

91.     Defendant Prescient induced Plaintiff to execute the Forbearance Agreement as a means of legally insulating Defendant Prescient from its subsequent unconscionable conduct.

92.     Defendant Prescient's inducement of Plaintiff to execute the Forbearance Agreement was unconscionable by its providing the loan with the clear intent of taking the Property and not assisting  Plaintiff with the Property's debt.

93.     Defendant Prescient's inducement of Plaintiff to execute the Forbearance Agreement was in order to perpetrate a fraud on Plaintiff.

**Plaintiff's refinance of the Property and Defendants' fraud**

94.     On or about December 2019, Plaintiff was in negotiations with a perspective syndicate of investors to refinance the Property.

95.     Plaintiff was fully transparent with  Defendants and kept them appraised of all negotiations with investors to refinance the Property.

96.     Plaintiff was in contact with C7 Capital which had agreed to provide a loan in the sum of five hundred thousand dollars ($500,000) to refinance the Property.

97.     Plaintiff was also in negotiations with Bank of the West, BNP Paribas ("BOW") to provide a bridge loan in the sum of two million eight hundred thousand dollars ($2,800,000) to refinance the Property.

98.     On January 1, 2020, Plaintiff telephoned BOW in order to generate documentation for the refinance of the Property.

99.     On January 1, 2020, Plaintiff, after this telephone call, immediately contacted Defendants Keck and Young to update them on the status of the refinancing.

100.     On January 1, 2020, Plaintiff requested that  Defendants Keck and Young refrain from filing the deed in lieu of foreclosure with the Recorder's Office regarding the Property so as to ensure the refinancing went through.

101.     On January 1, 2020, Defendant Young and Defendant Keck communicated to Plaintiff that Defendant Prescient would not file the deed in lieu of foreclosure regarding the Property.

102.     Plaintiff believed Defendants Young and Keck's representations to not file the deed in lieu of foreclosure to be true.

103.     Plaintiff relied on this representation from Defendants Keck and Young.

104.     Plaintiff's reliance caused it to progress negotiations with BOW for the refinancing of the Property, producing a bridge loan term sheet ("Term Sheet").

105.    On January 6, 2020, BOW provided Plaintiff with the bridge loan term sheet (the "Term Sheet") setting out the terms of refinancing of the Property. A copy of the Term Sheet is annexed hereto as Exhibit N.

106.    On January 6, 2020, via electronic mail message, Plaintiff sent the Term Sheet to Defendants Keck and Young.

107.    BOW's bridge loan to Plaintiff was for the sum of two million eight hundred thousand dollars ($2,800,000) to refinance the Property with an interest rate of four and two thirds percent (4.66%).

108.    Defendants Young and Keck used BOW's bridge loan refinancing as an opportunity to defraud and unlawfully extract more money from Plaintiff regarding the Loan on the Property.

109.    On January 6, 2020, via electronic mail message, Defendant Keck represented as fact that Plaintiff owed Defendants the sum of three million six hundred ninety-six thousand seven hundred eighty dollars sixty-one cents ($3,696,783.61) as the final payoff figure on the Loan. A copy of this electronic mail message and estimated final payoff figure are annexed hereto as Exhibit O.

110.    Defendant Keck's calculation represented as fact that Plaintiff had not discharged the December and January interest loan repayments and therefore incurred additional late fees for both months. *See* Exhibit O.

111.    Defendant Keck's representation was false because Plaintiff had paid both the December and January interest loan repayments to Defendant Prescient.

112.    As a result, Defendants applied the late fee charges to these payments unlawfully where Plaintiff had previously discharged them in a timely manner.

113.    Defendant Young's final payoff figure calculation represented as fact that Plaintiff owed Defendant Prescient the sum of three hundred six thousand nine hundred twenty-eight dollars sixty cents ($306,928.60) for a loan repayment due on November 1, 2019.

114.    Defendant Young's representation was false where Plaintiff owed Defendant Prescient the sum of one hundred forty-five thousand two hundred thirty-two dollars thirty-three cents ($145,232.33) pursuant to the terms of the Forbearance Agreement for a Loan repayment due on November 1, 2019. *See* Exhibit M, Article 4(a), p. 3.

115.     Defendant Young's final payoff figure calculation represented as fact that Plaintiff owed Defendant Prescient the sum of ninety thousand seven hundred fifty dollars ($90,750.00) which gave no credit to the loan reserve amount provided by Plaintiff.

116.     On or about January 6, 2020, Plaintiff sent Defendants the correct payoff calculation, being the sum of three million one hundred eighty thousand two hundred thirty-two dollars thirty-three cents ($3,180, 232.33). A copy of this corrected final payoff figure is annexed hereto as Exhibit P.

117.     Defendants would not agree to a loan final payoff figure of less than three million two hundred fifty thousand dollars ($3,250,000.00).

118.     On January 31, 2020, Plaintiff was forced to accept and agree to this dollar amount as a loan final payoff figure was required in order to close the bridge loan refinancing with BOW for the Property. A copy of this final payoff letter sent to Land Title Guarantee Company by Defendant Keck is annexed hereto as Exhibit Q.

119.     Defendants Young and Keck used the refinancing with BOW as an opportunity to defraud  Plaintiff into agreeing to an exorbitant unlawful loan final payoff figure.

120.     Defendants Young and Keck's actions were fraudulent and unconscionable.

121.     In addition, the interest rate of BOW's bridge loan to Plaintiff was over fifty percent (50%) less than the interest rate charged on the current Loan with  Defendant Prescient.

122.     Defendant Prescient was aware of this fact having been furnished with the Term Sheet by  Plaintiff on January 6, 2020.

123.     Notwithstanding Defendants' earlier representation to Plaintiff on January 1, 2020 that they would not file the deed in lieu of foreclosure, Defendants filed a Warranty Deed with the Recorder's Office on January 13, 2020. A copy of Eagle County, Colorado Accessor's Office records evidencing this filing is annexed hereto as Exhibit R.

124.     Defendants filed the deed even after they received the Term Sheet from  Plaintiff on January 6, 2020. *See* Exhibit R.

126.     Defendants filed the deed in lieu of foreclosure despite Plaintiff's compliance with the terms of the Forbearance Agreement.

127.     Defendants' actions demonstrated an intent to take the Property away from Plaintiff.

**The First Amendment to the Forbearance Agreement**

128.    Plaintiff continued to advance efforts with BOW to refinance the Property.

129.    On January 13, 2020, Defendant Prescient and Plaintiff Stone Creek executed the First Amendment to the Forbearance Agreement (the "FAFB") executed by Keck and Young signing as Partners of Defendant Prescient. A copy of the First Amendment to the Forbearance Agreement is annexed hereto as Exhibit S.

130.    Pursuant to the terms of the FAFB, Defendants accepted that Plaintiff received a commitment from BOW to receive in order to re-pay the Loan. *See* Exhibit S, recital C, p. 1.

**Defendant Prescient's Fraud**

131.    Pursuant to Article 1 of the FAFB, Defendants Prescient, Keck and Young agreed not to record the deed in lieu of foreclosure of the Property on or before January 24, 2020.

132.    Defendants Prescient, Keck and Young, in so doing, made a representation of fact to  Plaintiff on January 13, 2020.

133.    Plaintiff believed Defendants Prescient, Keck and Young's representation to be truthful.

134.    Plaintiff relied on this representation by being a signatory to the FAFB.

135.    Plaintiff relied on this representation by continuing to secure refinancing with BOW.

136.    Despite Defendant's representation, on January 21, 2020, Defendants filed the quit claim deed for the Property stating that Defendant Prescient was the title owner of the Property, not  Plaintiff. *See* Exhibit R.

137.    Defendants' actions demonstrated an intention to take the Property away from Plaintiff.

138.    Defendants' actions were contrary to the express wording of their status as beneficiaries of only a security interest in the Property as per the Rents and Leases Agreement. *See* Exhibit L.

**Defendants' Unlawful Interference with Plaintiff's Business Relations**

139.    On January 21, 2020, Defendants wrongfully filed the warranty deed for the Property stating that Defendant Prescient was the title owner of the Property, not the Plaintiff.

140.    On January 31, 2020 and February 7, 2020, Plaintiff challenged Defendants on this fact regarding the Property.

141.    On January 31, 2020, Defendants Prescient, Keck and Young admitted their wrong by subsequently correcting the warranty deed to record that Plaintiff was the title owner of the Property. A copy of an electronic mail message and warranty deed evidencing this is annexed hereto as Exhibit T.

142.    Defendants' actions were designed to intentionally interfere with Plaintiff's receipt of the bridge loan from BOW to refinance the Property.

143.    Defendants' actions were designed to tortiously interfere with Plaintiff's business opportunity with BOW to refinance the Property.

144.    The bridge loan from BOW was necessary in order to re-pay the Loan to Defendant Prescient.

145.    This fact was known and acknowledged by Defendants. *See* Exhibit S, recital C, p. 1.

146.    Defendants' actions demonstrated an intent to take the Property from  Plaintiff.

147.    Defendants' actions demonstrated an intent to frustrate Plaintiff's bridge loan from BOW.

148.    As a result of the acts of Defendants, Plaintiff Stone Creek suffered loss and damages in not receiving the bridge loan in the sum of two million eight hundred thousand dollars ($2,800,000) from BOW.

149.    As a result of the acts of Defendants, Plaintiff Stone Creek suffered loss and damages in being forced to continue paying an interest rate of ten percent (10%) on Defendant Prescient's Loan instead of four and two thirds percent (4.66%) on BOW's bridge loan.

150.    As a result of the acts of  Defendants, Plaintiff Stone Creek suffered loss and damages in the sum of eighty-five thousand dollars ($85,000.00), being the difference between the two interest rates that Plaintiff was forced to pay to Defendants because Defendants prevented Plaintiff receiving the BOW bridge loan.

**Emergence of the COVID-19 Virus**

151.    During January and February 2020, Plaintiff remained in constant contact with BOW to refinance the Property.

152.    Plaintiff kept  Defendants appraised of updates in the refinancing.

153.    At the beginning of March 2020, the COVID-19 virus escalated to a national pandemic in the United States.

154.    Between March 19, 2020, and April 27, 2020, the Recorder's Office was closed to the public.

**Defendant Prescient Files Warranty Deed to Take the Property**

155.    Despite this, on April 14, 2020,  Defendants electronically filed the warranty deed for the Property. A copy of this filed warranty deed evidencing this is annexed hereto as Exhibit U.

156.    The warranty deed stated that Defendant Prescient was the title owner of the Property.

157.    Defendants Young and Keck did so in order to take the Property from Plaintiff.

158.    Defendants Young and Keck did so in order to intentionally interfere with Plaintiff's receipt of the bridge loan from BOW to refinance the Property.

159.    As a result of the acts of Defendants, Plaintiff Stone Creek suffered loss and damages in sum of two million eight hundred thousand dollars ($2,800,000) in not receiving the bridge loan from BOW.

160.    As a result of the acts of Defendants, Plaintiff Stone Creek suffered loss and damages in being deprived of the equity of the Property.

**Defendants Immediately Set Up PCP Entity**

161.    On April 30, 2020,  Defendants Young and Keck formed the entity PCP in the State of Wisconsin.

162.    Pursuant to records available from the Secretary of State of the State of Wisconsin, PCP has no principal place of business and only a registered agent domiciled in the State of Wisconsin. *See* Exhibit B.

163.    Pursuant to records available from the Secretary of State of the State of Wisconsin, PCP has two members, Defendants Young and Prescient. *See* Exhibit B.

164.    On information and belief, Defendants Young and Prescient formed the entity PCP as a special purpose vehicle to hold the Property as a commercial real estate asset.

165.    Defendants Young and Prescient formed the entity PCP with the express intent of facilitating the transfer of ownership of the Property from Defendant Prescient to PCP and obfuscate the ownership and frustrate Plaintiff from redeeming the Property.

166.    On May 19, 2020, Defendant Young arranged for Defendant Prescient to convey the Property to Defendant PCP by way of a quit claim deed. *See* <u>Exhibit O.</u>

167.    Defendants Young and Keck, in so doing, intended to hinder and defraud Plaintiff in preventing it from receiving the sum of two million eight hundred thousand dollars ($2,800,000) to refinance the Property.

168.    Defendants, in so doing, conveyed the Property to Defendant PCP without receiving a reasonably equivalent value for this obligation.

169.    Defendants Young and Keck, in so doing, intended to place the Property beyond the reach of Plaintiff so as to cause Plaintiff to incur debts beyond its ability to pay them.

170.    This transfer occurred on May 19, 2020, less than four years before the within proceedings were filed.

**Defendants' Attempts to Sell the Property**

171.    On July 15, 2020, following a relaxing of restrictions on inter-state travel following the COVID-19 virus, Plaintiff travelled to the State of Colorado to inspect the Property.

172.    Plaintiff, on this occasion, observed that a 'for sale' sign had been erected on the Property.

173.    The above facts demonstrate that Defendants intended to take the Property from Plaintiff.

174.    The above facts demonstrate that Defendants contrived to cause Plaintiff to fail to secure financing with BOW so as to enable Defendants to file a warranty deed.

175.    The above facts demonstrate that Defendants then immediately created a corporate entity to act as a special purpose vehicle to receive the Property transferred to it by Defendant Prescient.

176.    The PCP entity was formed and used by Defendants Young and Keck soley as a special purpose vehicle to fraudulently transfer Plaintiff's Property.

177.    Defendants never intended to provide financing to Plaintiff for the Property; instead, the Loan and Defendants' subsequent acts were intended to take and resell the Property.

**FIRST CAUSE OF ACTION**

**(COMMON LAW FRAUD against Defendants Prescient, Young and Keck)**

178.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

179.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

180.    Defendants represented to Plaintiff on January 1, 2020, that they would not file the deed in lieu of foreclosure in order to allow Plaintiff to refinance the Property.

181.    Defendant Prescient made the same exact representation to Plaintiff on January 13, 2020, pursuant to an executed FAFB.

182.    Plaintiff believed these representations to be true.

183.    Defendants made these representations to  Plaintiff so that Plaintiff would rely on them.

184.    Plaintiff relied on Defendants' representations as true thereby engaging with BOW to refinance the Property.

185.    On January 8, 2020, Defendants filed the deed in lieu of foreclosure transferring ownership of the Property to Defendants.

186.    On January 21, 2020, Defendants filed the deed in lieu of foreclosure transferring ownership of the Property to Defendants.

187.    Defendants' prior representations to  Plaintiff were false.

188.    Defendants made the false representations to Plaintiff in order to intentionally interfere with Plaintiff's bona fide attempts to refinance the Property.

189.    As a result, the refinance of the Property has not occurred.

190.    Defendants made the false representations to Plaintiff in order to acquire the Property and subsequently attempt to sell the Property for profit.

191.    As a result of Defendants' acts of fraud, Plaintiff has suffered loss and damage.

192.    By reason of the foregoing, the Court should place the Property in a Constructive Trust and/or in the alternative grant an equitable lien over the Property, or in the alternative, Defendants are liable to Plaintiff in the amount of two million eight hundred thousand dollars

($2,800,000) plus eighty-five thousand dollars ($85,000) being the difference in the interest rates charged on the Loan by Defendants versus that to be charged by BOW.

## SECOND CAUSE OF ACTION
## <u>(INTENTIONAL INTERFERENCE WITH A PROSPECTIVE BUSINESS RELATIONSHIP against Defendants Prescient, Young and Keck)</u>

193.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporate by reference each of the allegations made above as though the allegations were fully set forth herein.

194.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

195.    On January 1, 2020, BOW entered communications with Plaintiff in order to facilitate the refinance of the Property.

196.    On January 1, 2020, Plaintiff informed  Defendants of the communications with BOW for the refinance of the Property.

197.    On January 6, 2020, Plaintiff prepared loan documentation with BOW in the form of the Term Sheet.

198.    The Term Sheet was immediately provided to  Defendants.

199.    Pursuant to the FAFB,  Defendants acknowledged Plaintiff's refinancing of the Property with BOW.

200.    Despite this, Defendants intentionally interfered with Plaintiff's perspective business relations with BOW.

201.    On January 13, 2020, and January 21, 2020, Defendants filed the deed in lieu of foreclosure transferring ownership of the Property to Defendants.

202.     Defendants previously represented to  Plaintiff that they would not take such measures in order to facilitate the refinancing of the Property.

203.    The refinancing of the Property was to ensure full repayment of the Loan to Defendant Prescient.

204.    On January 6, 2020, Defendants miscalculated the final payoff figure.

205.    Defendants miscalculated the final payoff figure intentionally.

206.    Defendants submitted these miscalculations in order to defraud  Plaintiff.

207.   Defendants through their unconscionable conduct forced Plaintiff to accept an unlawful, higher incorrect final payoff figure required in order to close the refinancing bridge loan with BOW.

208.   Defendants' intentional acts were designed to purposively interfere with Plaintiff's bona fide attempts to refinance the Property.

209.   Defendants' intentional acts were designed to transfer the Property away from Plaintiff.

210.   As a result of Defendants' intentional acts, the refinance of the Property with BOW could not be finalized.

211.   As a result of Defendants' intentional acts, Plaintiff has suffered loss and damage in the sum of two million eight hundred eighty-five thousand dollars ($2,885,000).

212.   By reason of the foregoing, Defendants are liable to Plaintiff in the  sum of two million eight hundred eighty-five thousand dollars ($2,885,000).

### THIRD CAUSE OF ACTION

### (Alter-Ego Piercing the Corporate Veil against Defendants Young and Keck)

**A.   Defendants Young and Keck Caused the Corporate Forms of Defendants Prescient and PCP To Be Used To Perpetrate an Actual Fraud on Plaintiff for Defendants Young and Keck's Personal Gain.**

213.   Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

214.   Plaintiff incorporates all preceding paragraphs as if fully restated herein.

215.   Defendants Young and Keck made false representations to Plaintiff, thereby engaging in fraudulent conduct to cause harm to  Plaintiff.

216.    Defendants Young and Keck made these false representations for a dishonest purpose and with the intent of deceiving  Plaintiff.

217.    Defendants Young and Keck made these false representations in order to cause Plaintiff consequential financial loss and harm.

218.   Defendants Young and Keck made these false representations in order to

intentionally interfere with Plaintiff's bridge loan with BOW.

219.    Defendants Young and Keck made these false representations in order to intentionally frustrate Plaintiff's refinance of the Property.

220.    Defendants Young and Keck committed these acts in order to take the Property as they realized its potential commercial value.

221.    Defendants Young and Keck committed these acts in order to extort a higher rate of interest on their Loan rather the allow Plaintiff to close with BOW's bridge loan with an interest rate  fifty percent (50%) lower than that of Defendants.

222.    Defendants Young and Keck committed these acts soley for the purpose of filing the Warranty Deed so as to take the Property from  Plaintiff.

223.    Defendants Young and Keck committed these acts soley for the purpose of then re-selling the Property for significant commercial profits through the formation of the shell entity PCP acting as a vehicle to enable them to defraud  Plaintiff.

224.    Defendants Young and Keck used the corporate form of Defendants Prescient and PCP to defraud  Plaintiff.

225.    Defendants Young and Keck used the corporate form of Defendants Prescient and PCP in order to perpetrate a fraud upon  Plaintiff.

226.    Defendants Young and Keck perpetrated an actual fraud on Plaintiff for their own benefit, specifically misleading Plaintiff to believe that that  Defendants would not file the deed in lieu of foreclosure in order to allow Plaintiff to refinance the Property.

227.     Defendants Young and Keck used the corporate forms of Defendants Prescient and PCP to perpetrate this fraud and, in fact, perpetrated it.

228.    Defendants Young and Keck's commission of an actual fraud on Plaintiff was solely for Defendants Young and Keck's own benefit, specifically to take and re-sell the Property from  Plaintiff.

229.     By reason of the foregoing, Defendants Young and Keck are liable to Plaintiff in the amount of damages to be determined at trial.

### B.  The Corporate Form Was Organized and Operated As a Mere Tool or Business Conduit of Another.

230.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

231.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

232.    Defendants Young and Keck have or at relevant times had a financial interest, ownership, or control of Defendants Prescient and PCP as their Managing Members.

233.    There is such a unity between Defendant Young and Defendants Prescient and PCP, and between Defendant Keck and Defendants Prescient and PCP that the separateness of the corporations has ceased.

234.    Holding only Defendants Prescient and PCP's corporate entities liable would result in the injustice of leaving Plaintiff with an uncollectible judgment against Defendants Prescient and PCP while allowing the corporation's alter egos, and each other, to go free. Thus, it is proper for Plaintiff to pierce the corporate veil of Defendants Prescient and PCP for Defendants Young and Keck to be sued individually.

235.    By reason of the foregoing, Defendants Young and Keck are liable to Plaintiff Stone Creek in the amount of damages of two million eight hundred eighty-five thousand dollars ($2,885,000) to be determined at trial.

### FOURTH CAUSE OF ACTION
### <u>(FRAUDULENT TRANSFER against ALL Defendants)</u>

236.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

237.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

238.    Defendants were aware of Plaintiff's negotiations to secure a bridge loan on the Property since January 1, 2020.

239.    Defendants had also been furnished with the BOW bridge loan terms and conditions on January 6, 2020.

240.    Notwithstanding this, Defendants filed a warranty deed on January 13, 2020 in order to deliberately frustrate Plaintiff's refinancing and try and take the Property.

241.    Defendants at all times intended to take the Property from Plaintiff by fraudulent means contrary to the Rents and Leases Agreement.

242.    Defendants set up a limited liability company for tax purposes in order to receive the Property and transfer it away from Plaintiff.

243.    This conveyance deliberately prevented Plaintiff from obtaining refinancing with BOW.

244.    As a result of Defendants' actions, Plaintiff, as a potential creditor, was deprived of this right to payment of the sum of two million eight hundred thousand dollars ($2,800,000) from BOW.

245.    Defendants' transfer was intended to cause all or substantially all of Plaintiff's corporate assets to be transferred away from  Plaintiff.

246.    Defendants' transfer was intended to result in Plaintiff being unable to discharge the existing debt on the Property.

247.    Defendants' transfer was a fraudulent transfer contrary to C.R.S. 38-8-105, intended to defraud  Plaintiff.

248.    As a result of Defendants' acts of fraud, Plaintiff has suffered loss and damage.

249.    By reason of the foregoing, the Court should place the Property in a Constructive Trust and/or in the alternative grant an equitable lien over the Property, or in the alternative, Defendants are liable to Plaintiff in the amount of two million eight hundred thousand dollars ($2,800,000) plus ($85,000) being the difference in the interest rates charged on the Loan by Defendants versus that to be charged by BOW.


### FIFTH CAUSE OF ACTION
### (CIVIL CONSPIRACY against ALL Defendants)

250.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

251.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

252.    Defendants conspired with one another to defraud Plaintiff.

253.    Defendants Young and Keck, Prescient and PCP committed a fraud in order to cause loss and harm to Plaintiff.

254.    Defendants Young and Keck, Prescient and PCP conducted unlawful transactions involving the fraudulent transfer and sale of the Property.

255.    Defendants Young and Keck, Prescient and PCP conducted these unlawful transactions so as to perpetrate a fraud to cause loss, harm and to defraud Plaintiff.

256.    Defendants Young and Keck, Prescient and PCP, in so doing, collectively participated in unlawful transactions.

257.    Defendants Young and Keck, Prescient and PCP engaged and participated in unlawful property transfer so as to cause proximate damage to Plaintiff's business.

258.    Defendants Young and Keck, Prescient and PCP collectively participated in unlawful property transfer.

259.    Defendants Young and Keck, Prescient and PCP engaged and participated in unlawful transactions so as to cause proximate damage to Plaintiff's business.

260.    The conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff of its rights and interests in the Property.

261.    The conspiracy was formed with full knowledge and intent on the part of each Defendant to defraud and deprive Plaintiff of its rights and interests in its corporate assets.

262.    Each of Defendants' unlawful and overt acts were the proximate result of Plaintiff's injuries/damages.

263.    By reason of the foregoing, the Court should place the Property in a Constructive Trust and/or in the alternative grant an equitable lien over the Property, or in the alternative, Defendants are liable to Plaintiff in the amount of two million eight hundred thousand dollars ($2,800,000) plus eighty five thousand dollars ($85,000) being the difference in the interest rates charged on the Loan by Defendants versus that to be charged by BOW.

## SIXTH CAUSE OF ACTION
## (UNJUST ENRICHMENT against ALL Defendants)

264.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

265.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

266.    Plaintiff, pursuant to the Rents and Leases Agreement, conferred a security benefit on  Defendants.

267.    For this security benefit Plaintiff made monthly re-payments via a lock box system depositing payments from Plaintiff's commercial tenants to  Defendants.

268.    Plaintiff's attempts to re-finance the property were prevented by Defendants.

269.    This resulted in Defendants' security interest through fraudulent conduct being elevated to a mortgage with  Defendants foreclosing on the Property.

270.    Defendants did so with the sole intent of extinguishing Plaintiff's rights in the Property not anticipated by the Rents and Leases Agreement.

271.    Defendants' acts were for the sole purpose of deriving a benefit, being the taking of the Property to the detriment of  Plaintiff.

272.    Defendants' conveyance to PCP has put them in a position to dispose of the Property for a substantial gain.

273.    Any subsequent sale of the Property would cause Plaintiff to loose all its equitable interest in the Property not contemplated by the Rents and Leases Agreement.

274.    Any proceeds received by Defendants from any sale of the Property would be unjust enrichment.

275.    As a result, it would be inequitable for Defendants to retain such benefit particularly when perpetrated through fraud, an intentional interference with prospective business relations and a fraudulent transfer.

276.    By reason of the foregoing, the Court should place the Property in a Constructive Trust and/or in the alternative grant an equitable lien over the Property, or in the alternative, Defendants are liable to Plaintiff in the amount of two million eight hundred thousand dollars ($2,800,000) plus eighty-five thousand  dollars ($85,000) being the difference in the interest rates charged on the Loan by Defendants versus that to be charged by BOW.

## SEVENTH CAUSE OF ACTION
## (REQUEST FOR PRELIMINARY INJUNCTION against ALL Defendants)

277.    Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff re-alleges and incorporates by reference each of the allegations made above as though the allegations were fully set forth herein.

278.    Plaintiff incorporates all preceding paragraphs as if fully restated herein.

279.    For the following reasons and arguments, Plaintiff respectfully requests that this Court enter a Preliminary Injunction against each of the Defendants for the pendency of this lawsuit.

280.    The Court should enter the Preliminary Injunction with notice to each of the Defendants because Plaintiff will suffer immediate and irreparable injury, loss, or damage if a Preliminary Injunction is not granted.

281.    Plaintiff will suffer irreparable harm if each of the Defendants are not enjoined and restrained from doing the following during the pendency of this lawsuit:

a.      *Selling, alienating, conveying, encumbering, hypothecating, assigning or transferring the Property' to any individual personally; and*

b.      *Selling, alienating, conveying, encumbering, hypothecating, assigning or transferring the Property' to any corporate entity; and*

d.      *Receiving, assigning or transferring any of the commercial rental income from the Property' to any corporate entity; and*

e.      *Receiving, assigning or transferring any of the commercial rental income from the Property' to any individual personally; and*

g.      *Destroying or deleting any documents, evidence, or records, electronic or otherwise, that relate to any of the matters implicated by this lawsuit or pertaining to the Property, including but not limited to all hard drives, backups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information; and*

h.      *Destroying or deleting any documents, evidence, or records, electronic or otherwise, that relate to any of the matters implicated by this lawsuit or pertaining to the Property, including but not limited to all hard drives, backups, archives, e-mails, internal*

*memos, letters and/or correspondence, and all other possible sources of stored meta data or information; and*

i.      *Destroying or deleting any documents, evidence, or records, electronic or otherwise, that relate to any of the matters implicated by this lawsuit or pertaining to the Property, including but not limited to all hard drives, backups, archives, e-mails, internal memos, letters and/or correspondence, and all other possible sources of stored meta data or information; and*

j.      *Distributing, disbursing, delivering or depositing by electronic wire transfer or otherwise or alienating, encumbering, hypothecating, assigning or transferring any revenue generated from the purchase and sale of the Property from any of the individuals or their affiliates implicated by this lawsuit to any third party or corporate entity.*

282.    There is a substantial likelihood that Plaintiff will prevail on the merits, and the requested injunctive relief requests preservation of the status quo and safeguarding of evidence.

283.    Specifically, Plaintiff CPMD has the documentary evidence and proof to substantiate and support each of the causes of action pleaded against all Defendants in these proceedings. *See* Exhibits A-U.

284.    The harm faced by Plaintiff outweighs the harm that would be sustained by Defendants if a temporary restraining order and preliminary injunction was granted.  Plaintiff needs to have its investments protected.

285.    Specifically, Plaintiff needs to restrain Defendants from selling the Property to third parties which will cause imminent consequential loss and harm to Plaintiff.

286.    Monetary compensation will not be sufficient to remedy this consequential loss and harm to Plaintiff, CPMD as the Property of Plaintiff is unique commercial real estate.

287.    Plaintiff, prior to filing this suit, requested that Defendants afford him time to finalize the refinancing with BOW but, to no avail.

288.    Plaintiff fears, and there is evidence showing, that Defendants have intentionally and fraudulently instructed agents to sell Plaintiff's interests without Plaintiff's knowledge or consent.

289.     Finally, issuance of a preliminary injunction would not adversely affect public interest and public policy. Public policy is enhanced by an injunction to protect an investor's investment against fraud, and to protect and safeguard evidence to be used in litigation. ln fact, the issuance of the requested injunctions would positively impact public interest and public policy with no adverse effect.

290.     Plaintiff asks the Court to immediately set for hearing at the earliest possible time its Motion for Preliminary Injunction and, after hearing the request, issue a preliminary injunction against Defendants for the pendency of this lawsuit.

## JURY DEMAND

291.     Plaintiff requests that the Court set this case for a jury trial.

## PRAYER

292.     **WHEREFORE**, premises considered, Plaintiff respectfully requests that the Court set this case for trial and that the Court grant Plaintiff the following relief against Defendants, jointly and severally, as follows:

1. Compensatory damages not less than the sum of two million eight hundred eighty-five thousand dollars ($2,885,000) to be proven at trial;

2. In the alternative, to place the Property in a Constructive Trust for the benefit of the Plaintiff; and/or

3. Place an equitable lien on the Property in favor of the Plaintiff;

4. Exemplary, treble and statutory damages to be proven at trial;

5. Attorneys' fees and costs of suit;

6. Pre-judgment interest at the maximum rate allowed by law; and

7. Such other and further relief as the Court deems just and proper.

DATED:     New York, New York
               July 24, 2020

Respectfully submitted,

/s/ Joshua D. Brinen
Joshua D. Brinen
Brinen & Associates, LLC
90 Broad Street, Tenth Floor
New York, New York 10004
(212) 330-8151 (Telephone)
(212) 227-0201 (Fax)
jbrinen@brinenlaw.com
Attorneys for the Plaintiff

/s/ Mark E. White
Mark E. White
Brinen & Associates, LLC
90 Broad Street, Tenth Floor
New York, New York 10004
(212) 330-8151 (Telephone)
(212) 227-0201 (Fax)
mwhite@brinenlaw.com
Attorneys for the Plaintiff

## VERIFICATION

**MIKHAIL KAMINSKI**, being duly sworn, says:

I am the Managing Member of Plaintiff STONE CREEK-COLORADO, LLC. I have read the foregoing Complaint, and I know the contents thereof. The same is true to the best of my knowledge, except as to those matters alleged upon information and belief, and as to those matters, I believe them to be true.

Mikhail Kaminski

Sworn to before me this 24
day of July              , 2020.

NOTARY PUBLIC

RHONDA L. NORMAN
Notary Public-Minnesota
My Commission Expires Jan 31, 2025